IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Daniel C. Ruffner, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1566 C.D. 2016 |
| | : | Submitted: February 17, 2017 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                                FILED: June 22, 2017

Daniel C. Ruffner (Claimant), *pro se*, petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) holding that Claimant was ineligible for the $8,840 in unemployment compensation benefits he had collected and, thus, liable for a fault overpayment of benefits pursuant to Section 804(a) of the Unemployment Compensation Law (Law).[1]  In so holding, the Board adopted the Referee's findings that Claimant had voluntarily quit his job and was not truthful when he reported his separation as a layoff.  Claimant contends that the Board's findings are not supported by substantial evidence and that he was prejudiced by the 19-month delay between the UC Service Center's approval of benefits and its subsequent revocation of them, long after his benefits had terminated.  We reverse and remand.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 874(a).

Claimant worked full-time as an auto mechanic at "Seybert's of Chicora" (Employer) from October 17, 2013, to August 28, 2014. Claimant explains that upon his separation from employment he applied for unemployment compensation by phone; he was informed by the UC Service Center that he could not open a new claim until his benefit weeks from a previous unemployment claim had expired. On October 8, 2014, after the prior benefits claim expired, Claimant applied for unemployment compensation by telephone, reporting that Employer had laid him off.

For the week ending October 18, 2014, Claimant began receiving benefits of $332 per week, plus an $8.00 dependent allowance. By April 11, 2015, Claimant had received 26 weeks of unemployment, which is the maximum, and his benefits terminated.

On May 19, 2016, over a year after he had exhausted his benefits, the UC Service Center sent Claimant a request for information. Claimant did not respond. On May 31, 2016, the UC Service Center issued three Notices of Determination. The first notice informed Claimant that because he had voluntarily quit his employment, he was ineligible for the benefits he had received (and exhausted). The second notice informed Claimant that he had been overpaid by $8,840, which the UC Service Center held to be a fault overpayment because Claimant had not reported his voluntary quit. The third notice imposed a monetary penalty of $1,326 and deprived him of 28 benefit weeks on any future claim he might file.

Claimant appealed the three determinations, contending Employer had laid him off and that he had not quit his job. A hearing was held before a Referee. The sole witnesses were Claimant and John Seybert, Employer's owner.

Claimant testified that Employer employed two auto mechanics. The other mechanic earned less than Claimant and worked at one of Employer's other locations. Accordingly when business slowed down, Employer chose to lay off Claimant in August of 2014. Claimant stated that his layoff was "[b]ecause of loss of hours, no work and my boss laid me off." Notes of Testimony, 7/1/2016, at 6 (N.T. ___). Claimant testified that, prior to the layoff, "Seybert had cut [his] hours back to approximately half of what [he] was making." *Id*. at 5. On August 28, 2014, Seybert told Claimant that "business isn't picking up it's getting slower," and he had to "lay somebody off full time." *Id*. Claimant stated that he did not volunteer to be laid off. His wife homeschools their two children, and he is the sole provider. The unemployment benefit rate is less than what he can make working, even with decreased hours. Claimant stated that he did not understand why the controversy surrounding his unemployment claim was "transpiring today, two years after the fact." *Id*. at 7.

Seybert agreed that he employed two mechanics and that work had declined. In response, he split the work between the two employees; "[o]ne took a turn one week [leaving early] and the other took a turn the next week" leaving early. N.T. 6. He estimated that as a result, Claimant worked 60 hours biweekly, *i.e.*, 40 hours one week and 20 hours the next. Seybert testified that Claimant came to him and asked to be laid off, saying it really wasn't worth the 60 hour paycheck to travel. Seybert told Claimant, "if that's what you really want ... that's fine. I'll

3

lay you off. And so I did." *Id*. at 9. Seybert testified that he could not run the shop with only one person and "had to hire another guy after I laid-off [Claimant]." *Id*. at 7. Seybert testified that after he laid Claimant off in August of 2014, Claimant went to work for his competitor, "Doug," at "Something Motorsports." *Id*. at 8-9.

Claimant responded that he never went to work for "Doug;" he visited his shop for the purpose of selling him a diesel engine. N.T. 8. Seybert responded that he saw Claimant at Doug's shop every day. *Id*. at 8-9. Claimant denied this, again testifying that he never worked for Doug.

The Referee resolved all issues of credibility in favor of Employer, finding that Claimant asked to be laid off either because of the reduced hours or because he had planned to take another job.[2] The Referee found that Claimant was not truthful when he applied for benefits because he did not report that he had volunteered to be laid off. This warranted a fault overpayment and a penalty. The Referee affirmed all three of the UC Service Center's notices of determination.

Claimant appealed to the Board. Claimant asserted that he did not lie about his separation from Employer and had never worked for Something Motorsports. Because Claimant had an active unemployment claim from a prior job when he separated from Employer, he filed the claim at issue in October 2014, as instructed by the UC Service Center. Claimant again questioned how Employer could challenge his eligibility for benefits more than a year after the fact. Claimant argued that had Employer challenged his claim in a timely manner, he could have

---

[2] The Referee did not address whether the reduction in Claimant's hours was sufficient to give him a necessitous and compelling reason to resign. Section 402(b) of the Law, 43 P.S. §802(b).

4

presented witnesses to counter Seybert's unexpected statements at the hearing. The Board adopted the Referee's determination as its own, without discussion.

Claimant petitioned for this Court's review.[3] Once again, Claimant questions the way this matter proceeded and challenges the fairness of his hearing. He was allowed to collect and exhaust his unemployment benefits without any challenge from Employer. He complains that the Referee accepted Seybert's testimony without requiring any substantiation. Claimant contends that he had no way of countering Seybert's testimony because he had no way of knowing that Seybert would claim at the hearing that he worked for Something Motorsports. Finally, Claimant contends that the Referee gave her full attention to Seybert, but she interrupted Claimant and prevented him from making a record.

In response, the Board explains that because Employer filed a request for relief from charges, the UC Service Center had authority to review Claimant's benefits even after they ended. As for the delay between Claimant's application for benefits and the final declaration of his ineligibility, the Board asserts that the Law imposes no time limit for making a determination. On the merits, the Board states that its findings are binding on appeal because they are supported by substantial evidence. Finally, the Board notes that Claimant's disagreement with the Referee's credibility determination is beyond appellate review.

We begin with Claimant's challenge to the delay between the filing of his claim in October 2014 and the UC Service Center's issuance of notices of

---

[3] Our review determines "whether constitutional rights were violated, whether an error of law has been committed, or whether necessary findings of fact are supported by substantial evidence." *Roberts v. Unemployment Compensation Board of Review*, 977 A.2d 12, 16 n. 2 (Pa. Cmwlth. 2009).

5

determination, finding him liable for a fault overpayment in May 2016. Claimant raises a laches defense, without using that term. The UC Service Center's letter of May 19, 2016, requesting information from Claimant did not state that the information related to the benefits that had expired a year earlier. It merely stated that the Department of Labor & Industry (Department) "is requesting information from you relating to your claim for unemployment compensation (UC) benefits." Certified Record (C.R.) Item No. 2. It warned that failure to respond "may delay your UC benefits." *Id.*

No explanation for this delay has been offered by the UC Service Center, the Referee or the Board. In its brief, the Board acknowledges the extraordinary delay but argues that it was acceptable. The Board points out that Employer filed a request for relief from charges within 15 days of receiving notice of Claimant's claim. C.R. Item No. 3. Section 501(c)(1) of the Law requires the Department to "promptly examine" a claim for compensation, but it does not place a time limit on issuing a determination. 43 P.S. §821(c)(1).[4] Thus, the UC Service Center was authorized to issue the three determinations, even long after Claimant had exhausted his benefits.

In support of its position that the Department is under no time constraints, the Board cites *Grimm v. Unemployment Compensation Board of*

---

[4] It states in full:

> The department shall promptly examine each claim for waiting week credit and each claim for compensation and on the basis of the facts found by it shall determine whether or not the claim is valid.

43 P.S. §821(c)(1).

*Review*, (Pa. Cmwlth., No. 2265 C.D. 2014, filed October 28, 2015) (unreported).[5] In that case, the claimant began receiving unemployment compensation in February 2014; in August of 2014 she was determined to be ineligible and assessed a fault penalty. In her appeal to this Court, the claimant argued, *inter alia*, that she was prejudiced by the UC Service Center's five-month delay in its reversal of its decision to award compensation. We concluded that the claimant had waived the issue by not presenting it to the referee. In any case, during the five-month period, the UC Service Center was collecting questionnaires and conducting telephone interviews. Noting that the Law did not set specific timelines for completion of a "prompt examination," we expressed doubt that there had been an undue delay.

*Grimm* did not establish that a UC Service Center has forever to evaluate a claim. Rather, it turned on the conclusion that the claimant waived the issue of delay.

By contrast, here, Claimant raised the matter of the delay to the Referee, who did not address it. Claimant raised it again in his appeal to the Board, but the Board did not address it. The issue of delay has not been waived. Further, the record does not explain the 19-month gap between Claimant's application for unemployment benefits and the UC Service Center's determination that he was ineligible. There was no information provided, as in *Grimm*, about the UC Service Center's examination and why it took so long.

---

[5] Pursuant to Commonwealth Court Internal Operating Procedures §414(a), 210 Pa. Code §69.414(a), an unreported opinion of this Court may be cited for its persuasive value and not as binding precedent.

In its brief, the Board asserts that it was Employer's request for relief from charges that prompted its investigation. According to the Board, Employer requested relief from charges on October 21, 2014, but Employer did not file a responsive questionnaire to Claimant's application for unemployment compensation benefits until May 24, 2016. The record does not explain this 18-month gap.

Section 302 of the Law requires the Department to maintain a reserve account for each employer. 43 P.S. §782. The employer's account is then charged with all unemployment compensation paid to each individual who received base year wages from that employer. 43 P.S. §782(a).[6] "An employer seeking relief from charges is requesting a tax exemption ...." *Department of Labor and Industry, Office of Employment Security v. Unemployment Compensation Board of Review*, 501 A.2d 297, 299 (Pa. Cmwlth. 1985). "[T]here is a jurisdictional distinction between eligibility for unemployment compensation benefits under section 402 and a request for relief from charges under section 302 of the [Law]." *First National Bank of Bath v. Unemployment Compensation Board of Review*, 619 A.2d 801, 803 (Pa. Cmwlth. 1992). "[T]he filing of an appeal from an eligibility

---

[6] It provides in relevant part:

> The department shall establish and maintain for each employer a separate employer's reserve account in the following manner:
>
>> (a) An employer's account shall be charged with all compensation, including dependents' allowances, paid to each individual who received from such employer wage credits constituting the base of such compensation, in accordance with this subsection.

43 P.S. §782(a).

8

determination is separate and distinct from the filing of a request for relief from charges." *Id*. at 804.

The Board never informed Claimant that its action was based upon Employer's request for relief from charges or the factual basis for Employer's request. Claimant asserts that he was denied the opportunity to prepare a response so long after the fact and without advance notice of the reasons asserted by Employer. Likewise, Claimant repeatedly questioned the delay. The delay issue has not been waived. Because we conclude a remand is necessary, we need not address this issue further.

In addition, Claimant has challenged the fairness of his hearing before the Referee. A referee is obligated to conduct the hearing as follows:

> In a hearing the tribunal may examine the parties and their witnesses. Where a party is not represented by counsel the tribunal before whom the hearing is being held should advise him as to his rights, aid him in examining and cross-examining witnesses, and give him every assistance compatible with the impartial discharge of its official duties.

34 Pa. Code. §101.21(a). In applying this regulation, the Pennsylvania Supreme Court has instructed:

> The referee has a responsibility ... to assist a pro se claimant at a hearing so that the facts of the case necessary for a decision may be adequately developed to "insure that compensation will not be paid in cases in which the claimant is not eligible and that compensation will be paid if the facts, *thoroughly developed,* entitled the claimant to benefits."

*Bennett v. Unemployment Compensation Board of Review*, 445 A.2d 258, 259-60 (Pa. 1982) (quoting *Robinson v. Unemployment Compensation Board of Review*, 431 A.2d 378, 380 (Pa. 1981)) (emphasis in original). The referee is not obligated

to "advise a party on evidentiary questions or on specific points of law[,]" but the referee "must act reasonably in assisting in the development of necessary facts[.]" *Bennett*, 445 A.2d at 260. Where the referee fails to develop the facts and it results in prejudice to the claimant, reversal is appropriate. *Id*.

The hearing transcript is ten pages in length. The parties agreed on the duration of Claimant's employment, the lack of work and the fact that he was laid off. They disagreed on the cause. Claimant asserted that he was permanently laid off for lack of work, and Seybert asserted that he laid off Claimant at his request. Nevertheless, Seybert acknowledged that he laid off Claimant. They also disagreed about whether Claimant went to work for Seybert's nephew at "Something Motorsports."

The Referee found, as fact, that because Claimant filed his claim in October 2014, this filing date supports Seybert's version of the facts, *i.e.*, that Claimant went to work for another employer. Claimant contends that he immediately applied for compensation after his separation from Employer, but the UC Service Center informed him that he had first to exhaust his benefit weeks from a prior unemployment claim. Department records on Claimant's unemployment history are the way to resolve this contention. They will show whether Claimant collected benefits under a prior claim until October of 2014. It was the Referee's responsibility to develop the record on this point.

The Referee also found that Seybert "did not intend to lay off anyone [because he] in fact hired another employee to replace the claimant after he left [his] employment." Referee Decision at 2. Again, the record is devoid of specific information to support this finding. For all we know, Employer hired a

10

replacement months after Claimant left because work picked up. The record is devoid of information about when the new employee began or how many hours he worked.

Because the Referee did not develop the record, as is required by 34 Pa. Code §101.21(a), it lacks the information necessary to resolve the dispute. This requires a reversal and remand for a full evidentiary hearing addressing the delay in handling Claimant's claim; the delay in Employer's filing of a questionnaire; and whether Claimant has suffered prejudice by the delay that impacts the Department's jurisdiction to revoke his compensation more than a year after he had exhausted his benefits.

For these reasons, we reverse the Board's adjudication and remand for a new hearing consistent with this opinion.

_____
MARY HANNAH LEAVITT, President Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniel C. Ruffner,                                     :
        Petitioner                     :
                                       :
        v.                                    : No. 1566 C.D. 2016
                                         :
Unemployment Compensation                              :
Board of Review,                                       :
        Respondent                     :

## **O R D E R**

AND NOW, this 22nd day of June, 2017, the order of the Unemployment Compensation Board of Review, dated August 12, 2016, is REVERSED and the above-captioned matter is REMANDED for an evidentiary hearing consistent with this opinion.

        Jurisdiction relinquished.

                                         _____

                                       MARY HANNAH LEAVITT, President Judge