# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark E. McFadden,                :
                Petitioner     :
                             :
           v.              :   No. 951 C.D. 2018
                             :   Submitted:  April 5, 2019
Unemployment Compensation   :
Board of Review,           :
              Respondent   :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge


<u>OPINION NOT REPORTED</u>


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**         **FILED:  November 21, 2019**

      Mark E. McFadden (Claimant), proceeding pro se, petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board) dated June 12, 2018, which affirmed the Referee's Decision dismissing Claimant's appeal as untimely pursuant to Section 501(e) of the UC Law[1] (Law).  On appeal, Claimant avers the UC Altoona Service Center (Service Center) erred by accepting a Request for Relief From Charges (Request), which he characterizes as an "untimely appeal,"

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 821(e) (providing 15 days to appeal a determination before a determination is deemed final).  If an appeal is not filed within 15 days, the referee and Board lack jurisdiction to consider the matter. *Carney v. Unemployment Comp. Bd. of Review*, 181 A.3d 1286, 1287-88 (Pa. Cmwlth. 2018).

filed by his former employer Arthur J. Gallagher Service (Employer).[2]  Claimant argues that because the Request was untimely, the Service Center and the Board lacked authority to consider Employer's Request and, therefore, all actions after his initial UC eligibility determination are invalid.  Additionally, Claimant avers the Board erred by concluding Claimant did not demonstrate proper cause for his nonappearance at a March 19, 2018 hearing (Hearing).  Specifically, Claimant argues the Board erred by improperly relying on the mailbox rule to presume timely delivery of the Notice of the Hearing (Notice) without supporting evidence, and in light of Claimant's testimony to the contrary.  Under the current state of the law, we are constrained to affirm.

From August 24, 2015, until his discharge on May 8, 2017, Claimant worked as a senior account manager for Employer.  After his discharge, Claimant filed an application for UC benefits in June 2017, and thereafter received bi-weekly benefits through January 2018, pursuant to a Notice of Financial Determination.[3]  After receiving the Request, the Service Center mailed to Claimant's last known address a Notice of Determination and Notice of Determination Overpayment of Benefits (Determinations).  The Determinations stated Claimant was ineligible to receive UC

---

[2] We have rearranged the order of Claimant's arguments for ease of resolution of the issues.

[3] The record contains a letter, dated June 27, 2017, in which Employer requests a determination as to Claimant's eligibility following this initial determination. (Certified Record (C.R.) Item 2, Ex. SC-8.)  It is unclear whether this letter ever reached the Service Center. Employer subsequently attached this June 27, 2017 letter to its Request, inquiring as to the status of its protest. (*Id.*, Ex. SC-7.)  All of these documents were received by the Service Center in December 2018.  Neither Claimant nor the Board reference Employer's June 27, 2017 letter, explain what occurred during the initial proceedings, or assert what, if any, impact the letter has on this Court's consideration of the issues before it.  This letter raises some serious questions about the initial decision to commence payments to Claimant, but, ultimately, does not alter our result.

benefits pursuant to Section 402(e)[4] of the Law because he was discharged for insubordination and that he was liable for repayment of the UC benefits that he received pursuant to Section 804(a)[5] of the Law. (Notices of Determination, Certified Record (C.R.) Item 5.) The Determinations stated Claimant had until February 6, 2018, to appeal the Determinations, consistent with Section 501(e) of the Law. (Notices of Determination, C.R. Item 5.)

On February 8, 2018, Claimant filed an appeal of the Determinations to the Board. Claimant's appeal stated that the reason it was untimely was because he did not receive the Determinations until February 7, 2018, the day after the appeal was due. Thereafter, on March 5, 2018, the Board mailed to Claimant the Notice scheduling the Hearing for March 19, 2018, to determine "[w]hether [Claimant] filed a timely and valid appeal from the initial determination." (Notice of Hearing, C.R. Item 8.) Claimant did not appear at said Hearing, and the Referee conducted the Hearing in Claimant's absence.[6] On March 20, 2018, the Referee entered a Decision with the following findings of fact:

1. On January 22, 2018, the Altoona UC Service Center mailed 2 Notices of Determinations to the [C]laimant's last known mailing address, 1 of which denied benefits under Section 804(a) of the UC Law.

2. Neither determination mailed to the [C]laimant was returned by the postal authorities as being undeliverable.

---

[4] Pursuant to Section 402(e) of the Law, a claimant is ineligible to receive UC benefits when "unemployment is due to [the claimant's] discharge or temporary suspension from work for willful misconduct connected with [the claimant's] work." 43 P.S. § 802(e).

[5] Pursuant to Section 804(a) of the Law, a claimant is liable for repayment of UC benefits claimant was not entitled to receive. 43 P.S. § 874(a).

[6] "If a party notified of the date, hour and place of a hearing fails to attend a hearing without proper cause, the hearing may be held in [the party's] absence." Section 101.51 of the Board's Regulations, 34 Pa. Code § 101.51.

3

3. Said determinations contained appeal instructions which indicated the last day to file a timely appeal was February 6, 2018.

4. The [C]laimant filed an appeal electronically on February 8, 2018.

(Referee Decision, Findings of Fact ¶¶ 1-4.) Based upon the foregoing facts, the Referee dismissed Claimant's appeal as untimely pursuant to Section 501(e) of the Law.

Thereafter, Claimant filed an appeal of the Referee's Decision to the Board requesting the matter be reopened.[7] In response, the Board remanded the case to the Referee to conduct a hearing "to receive testimony and evidence on the [C]laimant's reason for his nonappearance at the previous [H]earing." (Board Hearing Order, C.R. Item 16.) Additionally, the Board's Order stated that the parties could present evidence at the remand hearing regarding the timeliness of Claimant's appeal of the Determinations and on the merits of Claimant's appeal, but that if the Board found he was without proper cause for his nonappearance, it would not consider the other evidence.[8] (*Id.*)

At the remand hearing, Claimant testified that he did not appear at the Hearing because he received the Notice "after the hearing date had already occurred."

---

[7] A request to reopen a hearing "which is not received before the decision was mailed, but is received or postmarked on or before the 15th day after the decision of the referee was mailed to the parties shall constitute a request for further appeal to the Board and a reopening of the hearing." Section 101.24(c) of the Board's Regulations, 34 Pa. Code § 101.24(c). If the Board reopens the case, "the case will be remanded and a new hearing scheduled, with written notice thereof to each of the parties." *Id.* We have previously "held that not receiving or not timely receiving a hearing notice can constitute 'proper cause' for reopening a hearing." *Volk v. Unemployment Comp. Bd. of Review*, 49 A.3d 38, 40 (Pa. Cmwlth. 2012).

[8] If the Board determines that a claimant did not have proper cause for his nonappearance at a referee's hearing, the Board "must issue a decision on the merits with findings of fact based upon the record before the referee." *Ortiz v. Unemployment Comp. Bd. of Review*, 481 A.2d 1383, 1386 (Pa. Cmwlth. 1984).

4

(Remand Hearing Transcript at 9, C.R. Item 20.)  Specifically, Claimant testified that he received the Notice on March 19, 2018, the day of the Hearing.  As support of this claim, Claimant introduced into evidence the envelope in which the Notice was mailed.  The envelope contains a postage meter mark dated March 5, 2018, and a handwritten date of March 19, 2018.  (*Id*.; Claimant's Ex. 1; Claimant's Amended Brief (Br.), Attach. 01a.)  Claimant testified that he wrote March 19, 2018, on the envelope to note the day he received it in the mail.  Claimant further testified that he lives in a townhouse community with a central mailbox and that mail is sometimes placed in the wrong box.  Claimant suggested that the Notice could have been placed in the wrong box, causing a delay in its delivery to him.  However, Claimant did admit to receiving the Notice in his personal mailbox.

Following the remand hearing, the Board entered its June 12, 2018 Order, affirming the Referee's March 20, 2018 Decision dismissing Claimant's appeal as untimely.  The Board found that:

> The [C]laimant alleges he failed to appear because he received the notice of hearing after the hearing had been held on March 19, 2018. The [C]laimant advanced that he occasionally gets his mail redirected because he lives in a housing development which shares a central box with individual locked mailboxes and that it is not uncommon for the postal worker to place the mail in the wrong box.  However, regarding the notice of hearing, the [C]laimant acknowledged that he received it in his personal locked mailbox.  The record indicates that the notice of hearing was placed in the mail on March 5, 2018, and therefore[,] it is presumed to have been received in a timely manner.  The Board discredits the [C]laimant's testimony that he received the notice late. Consequently, the Board does not find proper cause for the nonappearance.  Therefore, the Board has not considered the testimony and evidence on the timeliness offered at the remand hearing.

(Board Order.) The Board concluded that based upon the record created prior to the remand hearing, the Referee's Decision dismissing Claimant's appeal as untimely was proper under the Law. Claimant now petitions this Court for review of the Board's June 12, 2018 Order.[9]

On appeal, Claimant avers the Service Center erred by accepting the Request filed by the Employer, which Claimant characterizes as an untimely appeal, and therefore, the Determinations should never have been issued. Claimant argues that because Employer's Request was untimely all actions after January 1, 2018, should be invalidated because the Service Center and Board lacked authority to consider Employer's Request. Additionally, Claimant avers that the Board erred in concluding that he did not demonstrate proper cause for his nonappearance at the Hearing.

First, Claimant avers that the Service Center erred by accepting the Request, filed more than 15 days after Claimant was found to be eligible for UC benefits via a Notice of Financial Determination in June 2017, and that the Service Center lacked the authority to issue the Determinations in response to Employer's Request because the June 2017 finding as to Claimant's eligibility was final. This argument is not supported by the law. Section 501(a) of the Law governs the procedure for determining a claimant's eligibility to receive UC benefits. Pursuant to Section 501(a) of the Law, the Pennsylvania Department of Labor and Industry (Department) is charged with examining all applications for UC benefits and must provide notice to claimants, and their employers, whether the claimant is eligible to receive UC

---

[9] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Comp. Bd. of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

benefits. 43 P.S. § 821(a).[10] If a claimant's UC claim is facially valid under Section 401(a) of the Law, 43 P.S. § 801(a),[11] and the claimant is found to be eligible for UC benefits by the Department, no determination as to eligibility need be made by the Department. 43 P.S. § 821(c). However, if an employer files information with the Department that raises an issue of a claimant's eligibility to receive UC benefits for reasons other than Section 401(a), the Department must render a determination on that issue. *Id.* A determination rendered by the Department in response to information provided by an employer to the Department becomes final if an appeal is not filed within 15 days after the Department issues the determination. 43 P.S. § 821(e).

Contrary to Claimant's characterization, Employer's request for relief from charges is not an "appeal." Pursuant to Section 302.1(a)(1) of the Law, an employer may file a request for relief from charges if, among other things, a claimant "was separated from his most recent work for an employer due to being discharged for willful misconduct connected with that work." 43 P.S. § 782.1(a)(1).[12] "An employer seeking relief from charges is requesting a tax exemption . . . ." *Ruffner*

---

[10] Section 501(a) of the Law provides, in relevant part:

> The [D]epartment shall promptly examine each application for benefits and on the basis of the facts found by it shall determine whether or not the application is valid. Notice shall be given by the [D]epartment in writing to the claimant and each base-year employer of the claimant, stating whether or not the claimant is eligible under section four hundred and one (a) [of the Law], and, if declared eligible thereunder, the weekly benefit rate and the maximum amount of compensation payable . . . .

43 P.S. § 821(a).

[11] Pursuant to Section 401(a) of the Law, a claimant that has applied for UC benefits is eligible to receive UC benefits if, among other things, the claimant meets the earnings requirements set forth in subsection (a). 43 P.S. § 801(a).

[12] Added by Section 3 of the Act of June 17, 2011, P.L. 16.

7

*v. Unemployment Comp. Bd. of Review*, 172 A.3d 91, 96 (Pa. Cmwlth. 2017) (citation omitted). A request for relief from charges is separate and distinct from an appeal of a notice of determination. *Id.* Because a request for relief from charges is not an "appeal," it is not subject to the 15-day appeal period contained in Section 501(e) of the Law. *Narducci v. Unemployment Comp. Bd. of Review*, 183 A.3d 488, 495-96 (Pa. Cmwlth. 2018) (rejecting, among other things, the argument "that the Board lacked jurisdiction to issue a notice of determination denying benefits [10] months after [the c]laimant was found to be eligible" based on an employer's relief from charges filed more than 15 days after the claimant's facially valid claim for benefits was granted).

Here, the Service Center did not err by considering Claimant's eligibility to receive UC benefits under Section 402 of the Law based on the information in Employer's Request, even though the Request was filed more than 15 days after the Service Center found Claimant to be financially eligible to receive UC benefits, because such Request was not an "appeal." Additionally, the Service Center did not err by issuing the Determinations in response to Employer's Request because no final determination had been previously made as to Claimant's eligibility to receive UC benefits. Consistent with Section 501(c) of the Law, the Service Center found Claimant eligible to receive UC benefits via a Notice of Financial Determination in June 2017, but did not issue a notice of determination at that time. A financial determination issued by the Department "determines 'financial eligibility' for UC benefits." *Narducci*, 183 A.3d at 490 n.4. Further, where "an employer does not provide information within 15 days [of receiving notice of a claimant's UC claim] giving reasons why [a] claim should not be granted . . . [and] the claim is facially valid, then benefits can be granted without a notice of determination being issued."

*Id.* at 496. Since no notice of determination was issued at that time, nothing became final upon the Service Center's acceptance of Claimant's UC application. *See id.* Therefore, the Service Center was not without authority to issue the Determinations because there had been no prior final determination regarding Claimant's eligibility to receive UC benefits under Section 402 of the Law.

Second, Claimant argues that the Board erred by finding Claimant did not demonstrate proper cause for not attending the Hearing. Specifically, Claimant contends the Board improperly relied on the mailbox rule to presume that the Notice was timely delivered to Claimant, despite there being no evidence that the Notice was actually mailed on March 5, 2018, and despite his testimony regarding the late delivery of the Notice. Claimant does not dispute the mailing of the Notice, but rather asserts that there is no evidence to support the Board's conclusion that the Notice was mailed on March 5, 2018. On appeal, Claimant suggests that the Notice could have been mailed after March 5, 2018, resulting in it being delivered to Claimant after the Hearing.

"The mailbox rule provides that the depositing of a properly addressed letter with prepaid postage in the post office raises a presumption that the letter reached its destination by due course of mail." *Douglas v. Unemployment Comp. Bd. of Review*, 151 A.3d 1188, 1191 (Pa. Cmwlth. 2016). The rule creates two rebuttable presumptions: (1) the regularity of the acts of public officials in placing items in the mail; and (2) the timely receipt by the addressee when a properly addressed and stamped letter has not been returned undeliverable. *Id.* at 1192. These two presumptions are applied separately. *Id.* Meaning, there must be evidence that an item was mailed before the presumption that the item was timely received by the

addressee may be invoked. *Id.* The addressee bears the burden of rebutting the presumption of timely receipt. *Id.* at 1193.

We recently examined what evidence is required for the Board to utilize the presumption of regularity in *Pinnacle Health Hospitals v. Unemployment Compensation Board of Review*, 210 A.3d 1127 (Pa. Cmwlth. 2019). In *Pinnacle Health Hospitals*, the claimant applied for, and was denied, UC benefits. The claimant then filed an appeal and a hearing was held before a referee. Pinnacle Health, the claimant's employer, did not appear at the hearing. Thereafter, the referee found the claimant to be eligible for UC benefits. Pinnacle Health appealed the referee's decision to the Board, claiming it never received notice of the hearing and challenged whether the notice was actually mailed. At a remand hearing, a clerk typist for the referee (Clerk), testified as to how she processes notices of hearings. She testified that the computer automatically generates hearing notices, which she then prints out and stuffs into envelopes. Clerk explained that she places these envelopes into a basket and that mailroom staff picks up these envelopes and processes them for mailing. Clerk admitted that she does not personally place stamps on the envelopes or place the envelopes in the mail. Relying on Clerk's testimony, the Board found that notice of the hearing, addressed to Pinnacle Hospital, was placed in the regular place of mail and applied the mailbox rule's second presumption to presume Pinnacle Health's timely receipt of the notice.

On appeal we reversed, concluding that Clerk's testimony "did not address how and when the notices she prepares enter the mail or whether the notices receive the proper postage prior to their mailing, as she only places mail in a basket on her desk, which must then be picked up and further processed." *Id* at 1133. We defined the regular place of mailing for a properly addressed and posted letter, as the place

10

where the item "enters the U.S. Mail, whether that be a mailbox, a post office, mail room, or other location where a mail carrier retrieves the mail." *Id*. We further concluded that "for the Board to utilize the presumption of regularity in order to invoke the presumption of receipt, it must present evidence regarding how properly addressed items, with proper postage affixed, customarily enter the mail" or demonstrate by some other means that an item was placed in the mail such as a log that records when an item is placed in the mail. *Id.*

Here, unlike in *Pinnacle Health Hospitals*, the fact of mailing is not in dispute. While the employer in *Pinnacle Health Hospitals* claimed it had never received the notice, Claimant admits to receiving the Notice in his personal mailbox. Since mailing has been established by Claimant's admitted receipt of the Notice, the Board did not err, as a matter of law, by applying the second presumption of the mailbox rule – that Claimant timely received the Notice. *See Douglas*, 151 A.3d at 1192. The burden then shifts to Claimant to rebut the presumption of timely receipt of the Notice. *Id*. at 1193. In rebuttal, Claimant asserts the Board erred by finding the Notice was mailed on March 5, 2018, specifically. Claimant argues the Notice could have been mailed after this date, causing its untimely delivery to him.

In reviewing this matter, we are guided by the well-established principles that:

> [T]he Board is the ultimate fact-finder in unemployment compensation matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made. Where substantial evidence supports the Board[']s findings, they are conclusive on appeal.

11

*Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (citations omitted). We have previously defined substantial evidence as "such relevant evidence which a reasonable mind might accept as adequate to support the finding under review." *Mormak v. Unemployment Comp. Bd. of Review*, 579 A.2d 1383, 1385 (Pa. Cmwlth. 1990). "In determining whether a finding is supported by substantial evidence, we review the record in the light most favorable to the party in whose favor [the Board] found, giving that party the benefit of all inferences which logically and reasonably can be drawn from the record." *Id.* Therefore, our review is limited to determining whether the Board's finding that the Notice was mailed on March 5, 2018, is supported by substantial evidence of record.

Upon examination of the record, we conclude the Board's finding is supported by substantial evidence. The Notice states that it was mailed on March 5, 2018, which was a Monday. While a notice of determination that indicates the date it was mailed, by itself, is not enough to establish proof of mailing, *Douglas*, 151 A.3d 1193, the record here contains additional evidence to support the Board's finding that the Notice was mailed on March 5, 2018. The envelope in which the Notice was mailed contains a postage meter mark dated March 5, 2018, indicating that the envelope was mailed on said date. Claimant argues that since the Board does not accept "'a private postage meter mark' to establish a date of filing . . . the same should hold for the letters sent by the [UC] Bureau." (Claimant's Amended Br. at 48.) However, pursuant to Section 101.82(b)(1)(ii) of the Board's Regulations, the Board accepts postage meter marks to establish the date of filing an appeal if there is no United States Postal Service (USPS) postmark. 34 Pa. Code § 101.82(b)(1)(ii). Considering this evidence, and all logical and reasonable inferences that can be drawn therefrom, in a light most favorable to the prevailing party, *Mormak*, 579 A.2d

12

at 1385, a reasonable mind might accept the foregoing as adequate evidence to support the finding that the Notice was mailed on March 5, 2018. Thus, the Board's finding is supported by substantial evidence. This in turn supports the Board's application of the presumption of timely receipt of the Notice. Claimant also asserts he rebutted the presumption of timely receipt of the Notice with his testimony at the remand hearing.

At the remand hearing, Claimant testified that he did not receive the Notice until March 19, 2018. Claimant testified that he lives in a townhouse community with a central mailbox and that mail is sometimes delivered in the wrong box. Claimant suggests that this could have caused a delay in the delivery of the Notice, but acknowledges that he received the Notice in his personal box. The Board discredited this testimony. Claimant argues the Board erred by discrediting his testimony. However, as stated above, "the Board is the ultimate finder of fact and arbiter of witness credibility." *Bruce v. Unemployment Comp. Bd. of Review*, 2 A.3d 667, 671 (Pa. Cmwlth. 2010). Under our precedent, this Court lacks the authority to overturn the Board's credibility determinations.

As additional support for his challenge to the application of the mailbox rule, Claimant brings to this Court's attention the United States Court of Appeals for the Third Circuit's opinion in *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314 (3d Cir. 2014). In *Lupyan*, an employee took a personal leave from her job at Corinthian Colleges Inc. (CCI), and, at the suggestion of her supervisor, visited her physician for purposes of applying for short term disability. After the employee received the requisite form from her physician, CCI determined the employee was eligible for Family and Medical Leave Act[13] (FMLA) leave. Thereafter, the employee met with

---

[13] 29 U.S.C. §§ 2601-2654.

13

another supervisor, who instructed the employee to mark family and medical leave on her request for leave form. CCI alleged that the same day as this meeting, it mailed the employee a letter "advising her that her leave was designated as FMLA leave, and further explaining her rights under the [FMLA]." *Id.* at 317. When the employee attempted to return to work, she was advised that she was being terminated due to, *inter alia*, "not return[ing] to work within the twelve weeks allotted for FMLA leave." *Id.* The employee claimed she was unaware she was on FMLA leave and brought suit against CCI, alleging it "interfered with her rights under the FMLA by failing to give notice that her leave fell under that Act, and that she was fired in retaliation for taking FMLA leave." *Id.* The district court entered summary judgment against the employee on both claims. As to the first claim, that the employee never received notice of her rights under the FMLA, the district court relied on evidence introduced by CCI that it mailed the employee a letter advising her of her rights under the FMLA, and applied the mailbox rule to presume the employee's timely receipt of the letter.

On appeal, the Third Circuit reversed the district court, concluding the employee's testimony that she did not receive the letter was enough to overcome summary judgment and entitled the employee to a hearing to determine whether she did in fact receive the letter. *Id.* at 322-23. In reaching this conclusion, the court noted that when receipt of an item is at issue, the individual attempting to rebut the mailbox rule's presumption of timely receipt are "forced to prove a negative []" and that this "elevates the weak presumption intended by the mailbox rule to a conclusive presumption that would be equivalent to an ironclad rule." *Id.* Thus, the question of receipt, and the employee's testimony of non-receipt, was to be placed before the fact finder.

14

This is consistent with our decision in *Volk v. Unemployment Compensation Board of Review*, 49 A.3d 38, 46 (Pa. Cmwlth. 2012). In that case, we concluded, relevantly, that an individual challenging the presumption of receipt must be given the opportunity to rebut the presumption at a hearing because denying an individual the opportunity to do so "transforms the presumption of receipt into an irrebuttable presumption." *Id.* at 46-47. Here, consistent with *Volk* and the Third Circuit's decision in *Lupyan*, Claimant was provided an opportunity to rebut the presumption of timely receipt at the remand hearing. Although we recognize, as did the Third Circuit, the difficulty of proving a negative, as stated above, the Board discredited Claimant's testimony, and we are without authority to overturn the Board's credibility determinations.

Additionally, on appeal, Claimant cites to three reports issued by USPS to support his claim that the Notice could have been delayed. These three reports examine the performance of USPS, including delays in processing and delivery. One such report, entitled "Quarterly Performance for Presort First-Class Mail[,]" examined USPS's performance from July 1, 2018 through September 30, 2018. This report concluded that performance for three-to-five-day first-class mail in the Philadelphia metro area during this time period was 94.4 percent on time.[14] Based on this statistic, Claimant concludes that "approximately 6% of mail is not delivered timely every day[]" and that this "provide[s] sufficient evidence to support the probability of an Administrative Breakdown with either" the Board or USPS. (Claimant's Amended Br. at 21 (emphasis omitted)). However, these reports were not presented to the Referee or to the Board and, therefore, are not part of the

---

[14] United States Postal Service, *Quarterly Performance for Presort First-Class Mail*, https://about.usps.com/what-we-are-doing/service-performance/fy2018-q4-presort-first-class-mail-quarterly-performance.html (last visited August 5, 2019).

certified record. As such, this Court cannot now consider these reports. *Umedman v. Unemployment Corp. Bd. of Review*, 52 A.3d 558, 564 (Pa. Cmwlth. 2012).

Based on the Board's credibility determinations, by which we are bound, Claimant has not satisfied his burden of rebutting the presumption of timely receipt of the Notice or the burden of demonstrating proper cause for his nonappearance at the Hearing. Because Claimant did not demonstrate proper cause for not attending the Hearing, the Board was required to decide the issue of the timeliness of his appeal based on the evidence presented at the Hearing. *Oritz v. Unemployment Comp. Bd. of Review*, 481 A.2d 1383, 1386 (Pa. Cmwlth. 1984). That evidence reflects that Claimant's appeal of the Determinations was due on February 6, 2018, and that Claimant did not file his appeal until February 8, 2018. Accordingly, we are constrained to affirm the Board's dismissal of Claimant's appeal as untimely under Section 501(e) of the Law.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark E. McFadden,  :
          Petitioner  :
  :
          v.  :    No. 951 C.D. 2018
  :
Unemployment Compensation  :
Board of Review,  :
          Respondent  :

# **O R D E R**

    **NOW**, November 21, 2019, the Order of the Unemployment Compensation Board of Review dated June 12, 2018, is **AFFIRMED**.

                          _____

                          **RENÉE COHN JUBELIRER,** Judge

Mark E. McFadden, : 
               Petitioner : 
                : 
     v. :    No. 951 C.D. 2018
                :    Submitted: April 5, 2019
Unemployment Compensation : 
Board of Review, : 
               Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

CONCURRING OPINION
BY PRESIDENT JUDGE LEAVITT            FILED: November 21, 2019

      The majority sets forth the terms of the Unemployment Compensation Law (Law),[1] as it was construed in *Narducci v. Unemployment Compensation Board of Review*, 183 A.3d 488, 490 (Pa. Cmwlth. 2018). The Law's procedures on an employer's request for relief from charges raise serious due process concerns for the claimant who has been granted unemployment benefits without knowledge that they may be set aside later.

      Section 501(a) of the Law, 43 P.S. §821(a), requires a "prompt" examination of, and determination on, an employee's application for unemployment benefits.[2] The Department of Labor and Industry (Department) gives notice to the

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751 – 918.10.

[2] Section 501(a) states, in pertinent part:

    (a) The department shall promptly examine each application for benefits and on the basis of the facts found by it shall determine whether or not the application is valid. Notice shall be given by the department in writing to the claimant and each base-year employer of the claimant, stating whether or not the claimant is eligible under

applicant's employer of its former employee's application. The employer may intervene to oppose the application with relevant information. The employer may, for example, take the position that the applicant is not eligible by reason of his misconduct or voluntary resignation. If benefits are granted, the employer may appeal that decision.

On the other hand, the employer may decide to do nothing upon receiving the Department's notice of the claimant's application for benefits. Later, even years later, the employer may file a request for relief from charges pursuant to Section 302.1 of the Law, 43 P.S. §782.1,[3] and seek to set aside the claimant's receipt of unemployment benefits. *See, e.g.*, *Ruffner v. Unemployment Compensation Board of Review*, 172 A.3d 91 (Pa. Cmwlth. 2017). If the Department grants the employer relief from charges, the Department revokes its prior grant of unemployment benefits. It then seeks recoupment from the claimant under Section 804 of the Law, 43 P.S. §874, for the benefits he has collected.

The Department deals with the competing requirements in the statutory scheme by treating the Section 501 requirement for a "prompt" examination and "determination" on an application for benefits as not triggered unless, or until, the employer either contests the application or seeks a relief from charges. To that end, the Department calls the award of benefits a "determination of financial eligibility," as opposed to an "official" determination issued pursuant to Section 501 of the Law. This is a fine line distinction that will escape the understanding of most claimants as well as their lawyers.

---

section four hundred and one (a), and, if declared eligible thereunder, the weekly benefit rate and the maximum amount of compensation payable[.]

43 P.S. §821(a).

[3] Section 302.1 of the Law was added by the Act of June 17, 2011, P.L. 16, 43 P.S. §782.1.

Section 501 of the Law gives both the claimant and the employer an opportunity to be heard on an application for unemployment benefits. Section 501 requires a prompt and final decision on the validity of an application for benefits. Neither occurs if the employer is silent and bides its time until it learns of the impact on its contribution rate. Then it can seek relief from charges under Section 302.1 of the Law, 43 P.S. §782.1. Effectively, the Department has allowed Section 501 to be gutted by Section 302.1 of the Law. This leaves claimants in limbo on whether they are entitled to the benefit checks they receive without objection from either the employer or the Department.

I question *Narducci*, 183 A.3d 488, and whether the Department's "non-official" grant of benefits via a "determination of financial eligibility" comports with Section 501 of the Law. However, the claimant in this case has not challenged the Department's implementation of Section 501 and, thus, I am constrained to join the panel. I write separately to express the concerns recited herein.

_____
MARY HANNAH LEAVITT, President Judge

MHL-3