IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Badra Phenneger,                          :
                          Petitioner      :
        v.                                :    No.  1413 C.D. 2021
                                          :    Submitted: September 9, 2022
Unemployment Compensation                 :
Board of Review,                          :
                          Respondent      :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                                    FILED:  January 23, 2023


        Badra Phenneger (Claimant)[1] petitions for review of the December 13, 2021

order of the Unemployment Compensation Board of Review (Board), affirming the

referee's decision and deeming her ineligible for unemployment compensation (UC)

benefits under Section 402(e) of the Unemployment Compensation Law (Law)[2] due

to her discharge from employment for willful misconduct.  After careful review, we

affirm.

---

[1] Claimant's first name appears in the record as both "Badra" and "Paula."  Claimant described "Badra" as her birth name but stated she "changed it to Paula three years ago."  Certified Record (C.R.), Item No. 11, Notes of Testimony (N.T.), 5/21/21, at 3.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

# I. Background and Procedural History

The Indiana UC Service Center issued notices of determination on April 2, 2021, deeming Claimant eligible for UC benefits. The notices indicated Claimant's employer, Unique Inns of Lancaster (Employer), discharged Claimant for allegedly violating its unlawful discrimination and harassment policy. The notices concluded that Claimant was aware or should have been aware of the policy, but that Employer had not met its burden of proving Claimant violated the policy.

Employer appealed to a UC referee, who held a telephone hearing on May 21, 2021. Employer presented testimony from four witnesses: general manager, Jennifer Buchter (Buchter); a.m. supervisor, Richard Chaput (Chaput); assistant manager, Iliana Mendez (Mendez); and general partner, Stephen Sikking (Sikking). Claimant participated in the hearing with counsel and also testified on her own behalf.

Buchter testified that Claimant worked full time for Employer as an executive chef from April 4, 2017, until her discharge on February 16, 2021. C.R., Item No. 11, N.T., 5/21/21, at 12-13. Buchter explained Employer discharged Claimant after an investigation revealed Claimant used a racial slur at work on February 6, 2021.[3] *Id.* at 13-14. Buchter expounded that using a slur violated Employer's unlawful discrimination and harassment policy. *Id.* at 13.

Regarding the events of February 6, 2021, Chaput testified he was "at work that day. . . . working on the line" when Claimant "had to run out to the store." *Id.* at 16. After Claimant returned, Chaput testified that she "came back onto the line and said to me, ['T]here was [sic] a lot of n[****]rs at the store.['] And I didn't know if I heard something wrong. I looked at her and I said, ['W]hat?['] And she said,

---

[3] Buchter testified she became aware of the alleged February 6, 2021 incident after she received a report from the restaurant manager, Dustin Doster (Doster). C.R., Item No. 11, N.T., 5/21/21, at 12-13. Employer did not present Doster's testimony.

2

['T]here was [sic] a lot of people at the store.['']" *Id.* Chaput noted he later spoke to Mendez "to clarify if what I heard was true," because Mendez was also present when Claimant used the slur. *Id.* at 16.

On cross-examination, Chaput acknowledged that he engaged in "either a text message or Facebook message conversation" with Claimant after her discharge, in which Claimant asked him whether he ever heard her use "racial slurs in the kitchen since she returned to work after being sick in January." *Id.* at 17-18. Chaput replied he had not heard Claimant use racial slurs, saying: "na, just keep faith. Remember, God works weird and does everything for a reason."[4] *Id.* He testified his statement to Claimant was different than what he reported to Employer because he "wanted to avoid conflict." *Id.* at 18.

Mendez also described Claimant's use of the racial slur on February 6, 2021. Mendez testified that she was "standing on the other side of the line, returning food for people" while Claimant stood "behind the line" and spoke with Chaput. *Id.* at 19. She continued: "I heard [Claimant] use the N word. And I quickly looked up at [Chaput] to make sure I heard what I thought I heard. And I heard him say, ['W]hat,['] to her, and she rephrased[] herself saying that ['T]here was [sic] a lot of people at the store.['']" *Id.* Mendez testified that she reported the incident to her manager, Doster, "as soon as he came in" on February 6, 2021, and that she spoke to Chaput about the incident the next day. *Id.*

---

[4] This conversation appears in the record along with similar text or Facebook messages Claimant allegedly exchanged with four other former coworkers. C.R., Item No. 3, Claimant Questionnaire with Attachments, 3/29/21. The referee admitted the messages into the record without objection. C.R., Item No. 11, N.T., 5/21/21, at 8-12.

Additionally, Sikking testified regarding a separate incident in 2019, during which Claimant was alleged to have made "disparaging and racial remarks."[5] *Id.* at 20. He explained that Claimant signed a document indicating she understood the severity of her actions, and that, if she made further "racially or sexually insensitive" remarks during her work shift, Employer would terminate her without further notice. *Id.* at 21. Sikking testified Claimant did not deny making the remarks in 2019. *Id.* Rather, Claimant explained the remarks "were in reference to songs that she had heard. And certainly, she did not intend them to be racially made and understood that if she were [sic] to do that again . . . that would be jeopardizing her job and promised she would not do that again." *Id.*

Claimant testified, conversely, that she did not go to the store or use a racial slur on or around February 6, 2021. *Id.* at 22, 25. She maintained her only trips around that time were to purchase supplies to make a birthday cake for Sikking on February 11, 2021, and to the post office. *Id.* at 25. Claimant testified that she first learned of the allegation she used a racial slur when Employer terminated her, and that Employer did not give her the opportunity to rebut or refute the allegation. *Id.* at the 22-23.

On May 24, 2021, the referee issued a decision concluding that Claimant was ineligible for UC benefits based on willful misconduct. C.R., Item No. 12, Referee's Decision and Order, 5/24/21, at 1-3 (unpaginated). Importantly, the referee credited the testimony of Employer's witnesses that Claimant used a racial slur and rejected Claimant's testimony to the contrary. *Id.* at 2. The referee found that Claimant was

---

[5] Claimant's counsel made a hearsay objection regarding the 2019 incident, as individuals involved in the incident were not present to testify. C.R., Item No. 11, N.T., 5/21/21, at 20. The referee sustained the objection but permitted Employer to present testimony "to enable [] Employer to develop the record . . . . to get to where [] Employer's involvement with this action took place." *Id.*

4

aware of Employer's discrimination and anti-harassment policy and had received a written warning after violating the policy in 2019, which informed her any further violations would result in termination. *Id.* at 2. The referee found that Employer's policy was reasonable, and that Claimant failed to provide good cause for violating the policy. *Id.* Moreover, the referee reasoned that Claimant's conduct was contrary to the standards of behavior Employer had the right to expect. *Id.* at 3. The referee therefore reversed the Service Center's determination.

Claimant appealed to the Board, which issued an order on December 13, 2021, affirming the referee. The Board concluded the referee's determination was proper and adopted and incorporated her findings and conclusions. Claimant filed a petition for review in this Court. She now requests that we reverse the Board's determination of ineligibility for UC benefits due to willful misconduct or, in the alternative, that we remand for the taking of additional testimony.

## II. Discussion

This Court reviews orders granting or denying UC benefits for violations of the petitioner's constitutional rights, violations of agency practice and procedure, or other errors of law. 2 Pa.C.S. § 704. We also review whether substantial evidence supports the findings of fact necessary to sustain the decision. *Id.* The Board is the ultimate factfinder in these cases and is entitled to assess witness credibility and weight of the evidence. *Hubbard v. Unemployment Comp. Bd. of Rev.*, 252 A.3d 1181, 1185 n.2 (Pa. Cmwlth. 2021) (citing *Peak v. Unemployment Comp. Bd. of Rev.*, 501 A.2d 1383, 1388 (Pa. 1985)). Thus, we view the evidence in a light most favorable to the party that prevailed before the Board, drawing all logical and reasonable inferences to determine if substantial evidence exists. *Sweeney v. Unemployment Comp. Bd. of Rev.*, 74 A.3d 1175, 1177 n.1 (Pa. Cmwlth. 2013)

5

(citing *Taylor v. Unemployment Comp. Bd. of Rev.*, 378 A.2d 829, 831 (Pa. 1977)). If substantial evidence supports the Board's findings, they are binding on appeal. *Allen v. Unemployment Comp. Bd. of Rev.*, 189 A.3d 1128, 1133 (Pa. Cmwlth. 2018) (citing *Kelly v. Unemployment Comp. Bd. of Rev.*, 776 A.2d 331, 336 (Pa. Cmwlth. 2001)).

Section 402(e) directs that a claimant will be ineligible for UC benefits if "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment.'" 43 P.S. § 802(e). Case law defines "willful misconduct" as:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employe[e]'s duties and obligations to the employer.

*Myers v. Unemployment Comp. Bd. of Rev.*, 625 A.2d 622, 625 (Pa. 1993) (quoting *McLean v. Unemployment Comp. Bd. of Rev.*, 383 A.2d 533, 535 (Pa. 1978)).

The employer generally bears the burden of proving that a claimant engaged in willful misconduct. *Sipps v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 479, 481 (Pa. Cmwlth. 2018) (quoting *Dep't of Transp. v. Unemployment Comp. Bd. of Rev.*, 755 A.2d 744, 747 n.4 (Pa. Cmwlth. 2000)). When willful misconduct is due to an alleged violation of a work rule, "the employer must establish the existence of the rule, its reasonableness, and that the employee was aware of the rule. Once [the] employer meets this burden, the burden shifts to the claimant to prove that the rule was unreasonable or that he had good cause for violating the rule." *Id.* at 482 (quoting *Weingard v. Unemployment Comp. Bd. of Rev.*, 26 A.3d 571, 574-75 (Pa. Cmwlth. 2011)). Further, even when an employer does not have a work rule in place,

6

this Court has characterized the use of racial slurs as clearly contrary to the standards of behavior an employer has the right to expect from an employee. *See Witkowski v. Unemployment Comp. Bd. of Rev.*, 633 A.2d 1259, 1260-61 (Pa. Cmwlth. 1993) (affirming the Board's willful misconduct determination where the claimant stated to two African American coworkers that the employer was "working [the claimant] like a n[****]r," because the statement was "so offensive that it should have been obvious that its use was inimical to [the e]mployer's best interest, and in complete disregard of the standards of behavior which [the e]mployer has a right to expect from its employees").

In this matter, Claimant does not dispute that using a racial slur in Employer's workplace would constitute willful misconduct. She instead focuses on challenging the finding that she used a slur. Claimant argues Employer did not present competent evidence[6] to support this finding, because Chaput was unsure of what he heard until he spoke to Mendez, and Mendez was unsure of what she heard until she spoke to Chaput. Claimant's Br. at 14. In addition, she argues she submitted text or Facebook messages from five former coworkers, including Chaput, indicating she did not use a slur. *Id.* at 15.

Claimant's argument does not warrant relief. As we summarized above, both Chaput and Mendez testified they heard Claimant use a racial slur on February 6, 2021. C.R., Item No. 11, N.T., 5/21/21, at 16, 19. It was within the Board's purview as the factfinder to credit their testimony. *Hubbard*, 252 A.3d at 1185 n.2 (citing *Peak*, 501 A.2d at 1388). Although Claimant urges this Court to view the evidence

---

[6] Although Claimant argues Employer did not present "competent evidence," her argument is more accurately that Employer did not present "substantial evidence." *See Frimet v. Unemployment Comp. Bd. of Rev.*, 78 A.3d 21, 26 n.7 (Pa. Cmwlth. 2013) (citing *Bruce v. Unemployment Comp. Bd. of Rev.*, 2 A.3d 667 (Pa. Cmwlth. 2010)) (explaining that substantial evidence is "evidence that a reasonable mind might accept as sufficient to support the conclusion reached").

in a manner favorable to her, and characterizes Chaput's and Mendez's testimony as uncertain, we must view the evidence in the light most favorable to Employer as the prevailing party before the Board. *Sweeney*, 74 A.3d at 1177 n.1 (citing *Taylor*, 378 A.2d at 831).

Claimant's text or Facebook messages with her alleged former coworkers do not compel a different result. None of those coworkers testified during the hearing, other than Chaput, whose testimony contradicted his statement in the message that Claimant did not use racial slurs. C.R., Item No. 11, N.T., 5/21/21, at 16-18. The messages are also very general in character, with most of the coworkers stating they did not "ever" hear Claimant use racial slurs or make racist statements, and only one of the messages appears to focus on February 6, 2021. C.R., Item No. 3, Claimant Questionnaire with Attachments, 3/29/21. Ultimately, it is for the Board to resolve conflicts in the evidence. *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (citing *Dumberth v. Unemployment Comp. Bd. of Rev.*, 837 A.2d 678 (Pa. Cmwlth. 2003) (*en banc*)).

Claimant argues in the alternative that this Court should remand for the taking of additional testimony. Claimant argues she did not go to the store on February 6, 2021, and so did not realize before the hearing that her alleged racial slur involved people at the store. *Id.* at 16. After the hearing, Claimant continues, she obtained "evidence that directly rebuts the witnesses['] testimony" and proves she did not go to the store on that day. *Id.* Claimant directs our attention to the Board's regulations, which permit a remand to the referee for the taking of additional testimony "if in the opinion of the Board, the previously established record is not sufficiently complete and adequate to enable the Board to render an appropriate decision." 34 Pa. Code §

8

101.104(c).[7]  Relevantly, Claimant relies on provisions in the regulations directing that a remand is "required" where (1) the appeal to the Board "involves a material point on which the record below is silent or incomplete or appears to be erroneous" or where (2) "[i]t appears that there may have been a denial of a fair hearing under the rules."  34 Pa. Code § 101.104(c)(1)-(2).

The regulations Claimant cites do not require that we remand this case.  These regulations govern the Board's ability to remand a case pending before it to a referee, not this Court's ability to remand a case the Board already decided.  Notably, our review of the record does not reveal that Claimant requested a remand while her case was pending before the Board, or that she informed the Board she had any additional evidence.  Although this Court retains the ability to remand if necessary,[8] we see no reason to do so here.  Claimant does not explain with specificity what new evidence she would like to present on remand, and the record belies her assertion that she was initially unaware her alleged racial slur described people at the store.  At the start of the hearing, the referee asked Claimant's counsel whether he had "an opportunity to review" the exhibits in the case with Claimant, and Claimant's counsel answered in the affirmative.  C.R., Item No. 11, N.T., 5/21/21, at 6.  The referee then described the exhibits, including the signed witness statements of Chaput and Mendez.  *Id.* at 8-10.  These statements indicate Claimant used the racial slur to describe people at the store.  *See* C.R., Item No. 4, Employer Questionnaire with Attachments, 3/31/21 (including Chaput's statement that Claimant said "[t]here were a lot of 'N[****]rs'

---

[7] The regulations cite Section 504 of the Law, which provides that the Board shall have the power to, among other things, review cases after decision by the referee "on the basis of the evidence previously submitted in the case, or direct the taking of additional evidence."  43 P.S. § 824.

[8] *See Ruffner v. Unemployment Comp. Bd. of Rev.*, 172 A.3d 91, 97 (Pa. Cmwlth. 2017) (reversing and remanding for a new evidentiary hearing, because the record lacked the information necessary to resolve the case).

9

at the store," and Mendez's statement that Claimant "use[d] the word 'N[****]rs' to describe the crowd" at the store); C.R., Item No. 6, Employer's Petition for Appeal with Attachments, 4/15/21 (same). As a result, we are satisfied that Claimant knew the substance of the allegations against her before the hearing, and that she received a full and fair opportunity to present her case.

### III. Conclusion

For all of the above reasons, we affirm the Board's December 13, 2021 order, which affirmed the referee and deemed Claimant ineligible for UC benefits due to willful misconduct under Section 402(e) of the Law.

_____

STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Badra Phenneger,                          :
                    Petitioner            :
        v.                                :    No.  1413 C.D. 2021
                                          :
Unemployment Compensation                 :
Board of Review,                          :
                    Respondent            :

# **O R D E R**


     **AND NOW**, this 23rd day of January 2023, the December 13, 2021 order of the Unemployment Compensation Board of Review is **AFFIRMED**.


                                     _____
                                     STACY WALLACE, Judge