## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chester Community Charter School,   :
                          Petitioner   :
                                       :
            v.                      :
                                         :
Unemployment Compensation     :
Board of Review,                   :         No. 1488 C.D. 2018
                     Respondent :     Submitted: June 3, 2019

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
JUDGE COVEY                             FILED: November 22, 2019

Chester Community Charter School (Employer) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) October 10, 2018 order affirming the Referee's decision determining that Deborah Hartzell (Claimant) is not ineligible for UC benefits under Section 402.1(1) of the UC Law (Law).[1] Employer presents two issues for this Court's review: (1) whether the UCBR capriciously and erroneously disregarded the Referee's findings that Claimant had reasonable assurance of continued employment and voluntarily quit her position with Employer; and (2) whether the UCBR erred by failing to consider that Claimant voluntarily quit her position where the record evidence clearly supported that finding. After review, we affirm.

Employer employed Claimant as a full-time fifth grade teacher from August 27, 2016 through June 9, 2017. In April or May 2017, Employer sent Claimant an employment contract for the 2017-2018 school year. Claimant did not return the contract, and voluntarily quit her employment. Thereafter, Claimant

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, added by Section 5 of the Act of July 6, 1977, P.L. 41, 43 P.S. § 802.1(1).

worked for Kelly Educational Staffing (Kelly) from September 11, 2017 through March 23, 2018.[2] Claimant moved to Cumberland County and since Kelly did not provide services in those school districts, Claimant quit her job with Kelly. Claimant subsequently worked for the Substitute Teacher Service (Substitute Teacher) from April 13, 2018 through May 5, 2018 when Substitute Teacher Service laid Claimant off. *See* Reproduced Record (R.R.) at 11b.[3]

On June 10, 2018, Claimant applied for UC benefits. On July 2, 2018, the Altoona UC Service Center determined that Claimant was eligible for UC benefits, as she was not disqualified under Section 402.1(1) of the Law for "**waiting week ending 6/16/2018**." July 2, 2018 Notice of Determination (emphasis added). Employer appealed and a Referee hearing was held on August 9, 2018. On August 10, 2018, the Referee affirmed the UC Service Center's determination. Employer appealed to the UCBR. On October 10, 2018, the UCBR affirmed the Referee's decision. Employer appealed to this Court.[4]

## Background

Pursuant to Section 401 of the Law,

[c]ompensation shall be payable to any employe who is or becomes unemployed, and who--

(a) Satisfies both of the following requirements:

---

[2] *See* Reproduced Record at 5b, 10b (Claimant's Internet Initial Claims).

[3] The pages in Employer's Reproduced Record are numbered incorrectly using a lowercase b, as opposed to a lowercase a as Pennsylvania Rule of Appellate Procedure 2173 requires. This Court will reference the pages as numbered therein.

[4] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

2

(1) Has, **within his base year**, been paid wages for employment as required by [S]ection 404(c) of [the Law[5]].

. . . .

(2) Except as provided in [S]ection 404(a)(3) and (e)(1) and (2) [of the Law[6]], not less than thirty-seven per centum (37%) of the employe's total base year wages have been paid in one or more quarters, other than the highest quarter in such employe's base year.

43 P.S. § 801 (emphasis added). Correspondingly, "Section 302 of the Law[7] requires the Department [of Labor & Industry (Department)] to maintain a reserve account for each employer. 43 P.S. § 782. The employer's account is then charged with all [UC] paid to each individual **who received base year wages from that employer**. 43 P.S. § 782(a)." *Ruffner v. Unemployment Comp. Bd. of Review*, 172 A.3d 91, 96 (Pa. Cmwlth. 2017) (emphasis added). Each employer is charged in the proportion that such wages bear to the individual's total wages from all of his base year employers. *See* 43 P.S. § 782(a)(3).

[U]nder Section 501 of the Law,[8] when a claim is filed, the following is to occur:

• [An e]**mployer is to receive notice that a [UC] claim is filed**, and if it opposes the grant of benefits, employer should provide information within 15 days as to why benefits should not be granted.

• **If an employer does not provide information within 15 days giving reasons why the claim should not be granted, the following is to occur**:

• If the claim is facially valid, then benefits can be granted without a notice of determination being issued;

---

[5] 43 P.S. § 804(c).
[6] 43 P.S. § 804(a)(3), (e)(1).
[7] Added by Section 4 of the Act of May 26, 1949, P.L. 1854, 43 P.S. § 782.
[8] 43 P.S. § 821.

> • If the claim is not facially valid and denied, then a notice of determination is issued from which a claimant can take an appeal.
>
> • **No notice of any determination is required to be given to an employer who has not provided information that the claimant is ineligible**.
>
> • If an employer files information after 15 days that claimant should be declared ineligible for benefits, then the employer is entitled to a notice of determination regarding its challenge to claimant's unemployment eligibility.
>
> • The Department has no time limit to make a revision to an eligibility determination based on employer's information that a claimant is not eligible for UC benefits.

*Narducci v. Unemployment Comp. Bd. of Review*, 183 A.3d 488, 496 (Pa. Cmwlth. 2018) (emphasis added).

In the instant case, the Department determined "[C]laimant's base year . . . as beginning January 1, 2017, and ending December 31, 2017."[9] Referee Dec. at 1, Finding of Fact (FOF) 1. Because Claimant received remuneration from Employer during the base year, Employer could potentially be charged with Claimant's UC benefits. Accordingly, the Department notified Employer that Claimant filed a UC claim. Based on the record before the Court, it appears that neither Kelly nor Substitute Teacher opposed Claimant's UC claim.[10]

---

[9] "'**Base year**' means the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year." 43 P.S. § 753(a). "'**Benefit Year**' with respect to an individual who files or has filed a "Valid Application for [UC] Benefits" means the fifty-two consecutive week period beginning with the day as of which such "Valid Application for [UC] Benefits" is filed[.]" 43 P.S. § 753(b).

[10] Employer's "EMPLOYER QUESTIONNAIRE" is the only employer questionnaire contained in the record. Certified Record Item 3 at 1; *see also* R.R. at 15b.

4

**Discussion**

Employer first argues that because Employer sent Claimant a contract for the 2017-2018 school year, she had a reasonable assurance of employment, *see* Referee Dec. at 1, FOF 3, and, rather than return the contract, she voluntarily quit, *see* Referee Dec. at 2, FOF 4; therefore, Claimant should be disqualified from receiving UC benefits under Section 402.1(1) of the Law. The UCBR rejoins that although Claimant had a reasonable assurance of employment with Employer for the 2017-2018 school year that would preclude Claimant from receiving UC benefits for the 2017 intervening summer break in service, said assurance does not preclude Claimant from receiving UC benefits for the 2018 summer. The UCBR specifically contends that because Employer's spring 2017 employment offer for the 2017-2018 school year was made over a year before Claimant filed her current UC application for week ending June 16, 2018, and only concerned the 2017 summer recess, Employer's offer did not prevent Claimant from qualifying for UC benefits thereafter.

Initially, Section 402.1(1) of the Law provides, in relevant part:

> With respect to service performed after December 31, 1977, in an instructional . . . capacity for an educational institution, benefits shall not be paid based on such services for any week of unemployment commencing during the period between two successive academic years . . . to any individual if such individual performs such services in the first of such academic years . . . and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years . . . .

43 P.S. § 802.1(1).

In other words, Section 402.1(1) of the Law

> disqualifies a claimant from receiving [UC] benefits for a summer vacation period ***between successive academic years*** when the claimant has been employed in, *inter alia*, an instructional capacity for an educational institution in the

5

first of the two academic years and, for the subsequent academic year, the claimant has 'reasonable assurances' of employment with an educational institution.

*Zielinski v. Unemployment Comp. Bd. of Review*, 834 A.2d 1225, 1227 (Pa. Cmwlth. 2003) (emphasis in original). Here, however, **Claimant did not apply for UC benefits "between successive academic years," but rather she applied for UC benefits the following year for claim week ending June 16, 2018**. *Id.* at 1227 (emphasis added).

Although Claimant had a reasonable assurance of employment with Employer for the 2017-2018 school year that would preclude her from receiving UC benefits for the intervening summer break in service, said assurance does not preclude Claimant from receiving UC benefits for the following year. Based thereon, the UCBR adopted the Referee's conclusion:

> Although it is clear from the chronology of the circumstances in this matter that [] [C]laimant's employment with [Employer] was during her base year, the Referee cannot conclude on this application, [] [C]laimant's reasonable assurance with [] [E]mployer at issue in this appeal has any bearing on her ability to collect [UC] benefits on her application effective June 10, 2018. Therefore, the Referee cannot find [] [C]laimant ineligible for [UC] benefits under the Law based on the specific circumstances of this case.

Referee Dec. at 2. This Court discerns no error in the Referee's analysis. Accordingly, the UCBR properly determined that Claimant was not disqualified under Section 402.1(1) of the Law from receiving UC benefits for week ending June 16, 2018.

Employer next argues that the UCBR erred by failing to consider that Claimant voluntarily quit her position with Employer, thereby disqualifying Claimant from receiving UC benefits under Section 402(b) of the Law. The UCBR responds that even if Claimant was disqualified from receiving UC benefits under Section

6

402(b) of the Law at the time of her separation from Employer, Claimant has since purged that disqualification under Section 401(f) of the Law.

Section 401(f) of the Law provides, in relevant part, that a claimant is eligible for UC benefits if the claimant

> [h]as earned, subsequent to his separation from work under circumstances which are disqualifying under . . . [S]ection[] 402(b), . . . of [the Law], remuneration for services in an amount equal to or in excess of six (6) times his weekly benefit rate in 'employment' as defined in [the Law].

43 P.S. § 801(f); *see also McGrail v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth. No. 873 C.D. 2013, filed February 25, 2014)[11] ("Under Section 401(f) [of the Law], **an employee can be eligible for benefits after having been previously disqualified due to circumstances involving voluntary quit** . . . if, after disqualification, he earns remuneration for services equal to or in excess of six times his weekly benefit rate."), slip op. at 2 n.2 (emphasis added).

Here, as stated by the UCBR:

> The claim record, under the heading 'Separating Employers,' and under the column '6X' says [sic] 'Yes' in the information grid for Claimant's employer [Kelly]. (R.[R. at] 3b). This reflects that Claimant earned sufficient wages in that employment, i.e., six times her weekly benefit rate, to satisfy the requirements of Section 401(f) [of the Law].[12]

UCBR Br. at 13 n.8; *see also* Certified Record Item 1 at 2. Because Claimant has earned sufficient wages to qualify for UC benefits under Section 401(f) of the Law, whether Claimant voluntarily quit her position with Employer has no bearing on

---

[11] This Court acknowledges that its unreported memorandum opinions may only be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[12] The Referee accepted the claim record into evidence without objection. *See* R.R. at 38b.

Claimant's eligibility for UC benefits for week ending June 16, 2018. Accordingly, the UCBR did not err by not considering that issue.

This Court recognizes that under Section 401(f) of the Law, if Claimant's intervening employment with Kelly ended in a disqualifying separation, it could prevent Claimant from receiving UC benefits for the week ending June 16, 2018.[13] However, because Kelly did not oppose Claimant's UC claim, that issue was not before the Referee and/or the UCBR and, thus, **is not before this Court**.[14]

Indeed, at the beginning of the Referee hearing, the Referee expressly stated: "Today's [h]earing arises as the result of an [a]ppeal filed by [] Employer to a Notice of Determination which was mailed on July 2nd, 2018 which found [] Claimant eligible for [UC] benefits under Section 402.1[(1)] of the [Law]." R.R. at 37b. Further, the UCBR specifically opined: "Section 402.1(1) [of the Law] is the only issue properly before the [UCBR] in this appeal." UCBR Dec. at 1. Accordingly, whether Claimant's separation from Kelly was a disqualifying event is not before this Court.[15] Notwithstanding, the fact that Claimant quit her job at Kelly is not in and of itself a disqualifying separation unless there is no compelling and necessitous reason therefor, *see* 43 P.S. § 402(b), and when the UCBR, which is charged with making that determination in the first instance, has not done so, as is the case herein, this Court has no basis upon which to make such a ruling.

---

[13] *See McGinnin v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth. No. 155 C.D. 2017, filed September 11, 2017), wherein the intervening employer challenged the claimant's eligibility upon notification that it was being charged for the claimant's UC benefits.

[14] "Because Claimant's application provided a facially valid reason for UC benefits to be granted and [Kelly] did not file a timely response, [UC] benefits could be awarded . . . ." *Narducci*, 183 A.3d at 497.

[15] Notably, there would be no need to remand this matter for a determination of whether there was a compelling and necessitous reason for the quit as Employer makes no argument with respect to Claimant's voluntary quit from Kelly. The only issue upon which Employer requests a remand is regarding Claimant's voluntary quit from the job with Employer.

8

Importantly, Section 302.1(a)(1) of the Law[16] entitled "**Relief from charges**" provides:

> If an individual was separated from his most recent work for an employer . . . due to his leaving that work without good cause attributable to his employment, . . . the employer shall be relieved of charges for compensation paid to the individual with respect to any week of unemployment occurring subsequent to such separation. . . .

43 P.S. § 782.1(a)(1).

This Court acknowledges that Employer may be relieved from the UC charges under Section 302.1(a)(1) of the Law, if it is determined that Claimant was separated from Employer due to Claimant "leaving that work without good cause attributable to his employment."[17] 43 P.S. § 782.1(a)(1). However, "**the filing of an appeal from an eligibility determination is separate and distinct from the filing of a request for relief from charges**." *Ruffner*, 172 A.3d at 96 (emphasis added) (quoting *First Nat'l Bank of Bath v. Unemployment Comp. Bd. of Review*, 619 A.2d 801, 804 (Pa. Cmwlth. 1992)). Accordingly, that issue was not before the UCBR and, consequently, is not before this Court.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[16] Added by Section 3 of the Act of June 17, 2011, P.L. 16.

[17] The Referee informed Claimant accordingly, "if [] [E]mployer in this matter has not already done so, it may wish to request relief from charges based on [] [C]laimant's separation from employment." Referee Dec. at 2.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chester Community Charter School,  :
                        Petitioner  :
                                    :
                    v.              :
                                    :
Unemployment Compensation           :
Board of Review,                    :        No. 1488 C.D. 2018
                       Respondent   :

## O R D E R

AND NOW, this 22nd day of November, 2019, the Unemployment Compensation Board of Review's October 10, 2018 order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chester Community Charter School,　　　　　　:
　　　　　　　　　　　　Petitioner　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　v.　　　　　　　　　　　　　: 　　No. 1488 C.D. 2018
　　　　　　　　　　　　　　　　　　　　　　: 　　Submitted: June 3, 2019
Unemployment Compensation　　　　　　　　　:
Board of Review,　　　　　　　　　　　　　　:
　　　　　　　　　　　　Respondent　　　　　:


BEFORE:　　HONORABLE ANNE E. COVEY, Judge
　　　　　　HONORABLE CHRISTINE FIZZANO CANNON, Judge
　　　　　　HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


DISSENTING OPINION BY
SENIOR JUDGE LEADBETTER　　　　　　　　FILED:　November 22, 2019


I must respectfully dissent. It is undisputed that Deborah Hartzell (Claimant) voluntarily quit her employment with Chester Community Charter School (CCCS) in the spring of 2017, after having received an offer of a contract for the next (2017-18) school year. I see nothing respecting her relationship or her separation from CCCS entitling her to unemployment compensation (UC) benefits under any provision of the Unemployment Compensation Law (Law).[1] Thereafter, the record reflects that she worked for Kelly Educational Staffing (Kelly) during the 2017-18 school year, but also quit that employment because she moved to another county where Kelly did not operate. She worked April to May of 2018 for Substitute Teacher Service (STS), where she obviously did not accrue enough base wages to entitle her to benefits resulting from her relationship with that employer.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751 - 918.10.

Nonetheless, the Majority holds that a year after voluntarily severing her relationship with CCCS, she is entitled to UC benefits because it did not offer her a job for the 2018-19 school year. I do not believe this is a correct interpretation of Section 402.1(1) of the Law.[2] Surely that section cannot rationally be construed to mean that if a teacher voluntarily refuses a contract for the following school year, he or she is disqualified from receiving benefits for the intervening summer, but can simply wait another year, or perhaps three or four, and then successfully apply for benefits. I do not see anything in the Law that would support such a conclusion. *See* Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(1) (legislature does not intend a result that is absurd, impossible of execution or unreasonable).

Regardless of the operation of Section 402.1(1), I agree with CCCS that Claimant is disqualified under Section 402(b) of the Law. The Majority holds that her disqualification under Section 402(b) resulting from her voluntary quit from CCCS was "purged" because of her work for Kelly.[3] However, she quit that job as well. While recognizing that, "under Section 401(f) of the Law, [43 P.S. § 801(f),] if Claimant's intervening employment with Kelly ended in a disqualifying separation, it could prevent Claimant from receiving UC benefits…, " the Majority dismisses this issue on the ground that, "because Kelly did not oppose Claimant's UC claim, that issue was not before the Referee and/or the UCBR [UC Board of Review] and, thus **is not before this Court**." (Majority op. at 8) (emphasis in the original).

---

[2] Section 402.1(1) was added by Section 5 of the Act of July 6, 1977, P.L. 41, 43 P.S. § 802.1(1).

[3] It is clear that Claimant's employment with STS was too brief to purge the prior disqualification.

I disagree. First, it is not clear that Kelly was even notified of the claim, let alone told that it might be subject to having its account charged so as to give it a reason to oppose it. Moreover, the evidence of Claimant's voluntary quit from Kelly was clear in the record; indeed, the Majority concedes that Claimant quit her job with Kelly because she moved to a different county. *Id.* at 2. The Referee and the UCBR simply chose to ignore this admission by Claimant. Since the issue of Claimant's disqualification was raised by CCCS, I do not believe that Kelly's non-participation justifies the UCBR's refusal to consider relevant evidence.[4] Finally, the Majority attempts to avoid the issue by stating, "[T]he fact that Claimant quit her job at Kelly is not in and of itself a disqualifying separation unless there is no compelling and necessitous reason therefor [], and when the UCBR, who [sic] is charged with making that determination in the first instance, has not done so…this Court has no basis upon which to make such a ruling." *Id.* at 8. Aside from the fact that the UCBR should have done so, and the fact that there is nothing in Claimant's statement of her reason for quitting Kelly that remotely suggests necessitous cause, the law is crystal clear that where a quit has been established it is the claimant's burden to come forward and establish such cause. Here, Claimant did not even show up for the hearing, let alone satisfy this burden. Thus I must disagree with the

---

[4] In spite of the fact that Claimant admitted in her application that she had voluntarily quit her employment with both CCCS and Kelly, and the Referee had specifically found that she had voluntarily quit CCCS (without mentioning her separation from Kelly), the UCBR refused to consider the 402(b) issue or to remand for the Referee to consider it. Nonetheless, strangely, in its decision, the UCBR suggested that, "[t]he Department may wish to investigate the circumstances surrounding . . . [C]laimant's separation from [CCCS] and issue a determination regarding [her] eligibility under Section 402(b) of the Law." (UCBR's Decision at 1.) It is unclear how this would play out after the UCBR has already found her eligible, but in any event would seem entirely unnecessary in light of the record already before it. In its brief, the UCBR asserted that Claimant's separation was never adjudicated by the Department or the Referee and was not properly before the UCBR. Given the Referee's specific finding, and for the reasons set forth above, I must disagree with this statement.

BBL - 3

Majority's analysis and its conclusion that Claimant is entitled to benefits. I would reverse.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge